UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LEONARD DRAVES,

                        Plaintiff,

                -against-

CITY OF NEW YORK and FIRE DEPARTMENT
OF THE CITY OF NEW YORK, DANIEL NIGRO,
Individually and in his capacity as Fire Commissioner,
LAURA KAVANAGH, Individually and in her capacity
as Fire Commissioner, ROBERT TUCKER, Individually
and in his capacity as Fire Commissioner, MICHAEL
GALA, Individually and in his capacity as Chief of
FDNY Personnel, MICHAEL MASSUCCI, Individually
and in his capacity as Chief of FDNY Personnel,
THOMAS PATRISSY, Individually and in his capacity
as Battalion Chief in Charge of the FDNY Bureau of
Health Services.

                     Defendants.

-------------------------------------------------------------------X

Index No.

25-cv-3305

**<u>VERIFIED COMPLAINT</u>**

JURY TRIAL DEMANDED

      Plaintiff Leonard Draves ("Draves"), by and through his undersigned attorney, Peter J. Gleason, PC, as and for his complaint against defendants City of New York ("City"), and the Fire Department of the City of New York ("FDNY"), hereby alleges as follows:

### NATURE OF THE ACTION

      1.     This an action is brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301-4335, New York State Military Law § 243, the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act") and related state and local law to remedy violations of Plaintiff's rights to reemployment, benefits, and protection from discrimination based on his military service and disability.

1

2.      Despite Draves dedicated service to the City of New York as a Police Officer, Firefighter, Fire Marshal and a decorated wartime commissioned officer in the United States Army, Defendants have systematically denied him the right to reemployment to the FDNY after his Honorable Discharge, employment related benefits accrued during his wartime military service, and access to the FDNY's World Trade Center Health Program ("WTC Health Program") which provides critical medical monitoring and treatment services to first responders who participated in rescue and recovery operations following the September 11, 2001 terrorist attacks.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 38 U.S.C. § 4323(b)(3), which provides that the district courts of the United States have jurisdiction over actions brought under USERRA, and 28 U.S.C. § 1331, which provides for federal question jurisdiction.

4.      This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically the ADA, the Rehabilitation Act.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as these claims form part of the same case or controversy as Plaintiff's federal claims.

6.      Venue is proper in this Court pursuant to 38 U.S.C. § 4323(c)(1) and 28 U.S.C. § 1391(b), as Defendants maintain offices and conduct business within the Eastern District of New York, and a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

7.      There is no statute of limitations for claims brought under USERRA. 38 U.S.C. § 4327(b) expressly provides that "no State statute of limitations shall apply" to any proceeding under USERRA.

## PARTIES

8.      Plaintiff LEONARD DRAVES is a natural person and a citizen of the State of New York. During the relevant time period, Draves was employed as a Firefighter and Fire Marshal with the FDNY, actively participated in the WTC rescue and recovery operations from

2

September 11, 2001, through February 18, 2002, and was called to active service as a commissioned officer in the United States military during a Time of War and National Emergency from February 19, 2002, until January 31, 2019.

9.    Defendant DANIEL NIGRO ("Nigro") is an individual at the times relevant to this action, resided in the State of New York and was the Commissioner of the New York City Fire Department ("FDNY").

10.    Defendant LAURA KAVANAGH ("Kavanagh") is an individual at the times relevant to this action, resided in the State of New York and succeeded Nigro the Commissioner of the New York City Fire Department ("FDNY").

11.    Defendant ROBERT TUCKER ("Tucker") is an individual at the times relevant to this action, resided in the State of New York and succeeded Kavanagh the Commissioner of the New York City Fire Department ("FDNY").

12.    Defendant MICHAEL GALA ("Gala") is an individual and at the times relevant to this action, resided in the State of New York and was the Chief of Uniformed Personnel of the New York City Fire Department ("FDNY").

13.    Defendant MICHAEL MASSUCCI ("Massucci") is an individual and at the times relevant to this action, resided in the State of New York and succeeded Gala as the Chief of Uniformed Personnel of the New York City Fire Department ("FDNY").

14.    Defendant THOMAS PATRISSY, is an individual and at the times relevant to this action, resided in the State of New York and was Battalion Chief in Charge of the Bureau of Health Services of the New York City Fire Department ("FDNY").

15.    Defendant CITY OF NEW YORK is a municipal corporation organized and existing under the laws of the State of New York, with its principal place of business at City Hall, New York, New York 10007. The City of New York is an employer within the meaning of the ADA, NYSHRL, and NYCHRL, and a recipient of federal financial assistance within the meaning of the Rehabilitation Act.

16.    Defendant FIRE DEPARTMENT OF THE CITY OF NEW YORK ("FDNY") is an agency of the City of New York, with its headquarters located at 9 Metro Tech Plaza, Brooklyn, New York 11201.

17.    Defendant FDNY is an agency of the City of New York responsible for providing fire protection, emergency medical services, and other critical public safety services throughout

3

New York City. The FDNY is an employer within the meaning of the ADA, NYSHRL, and NYCHRL, and a recipient of federal financial assistance within the meaning of the Rehabilitation Act. The FDNY operates the WTC Health Program for its members who participated in rescue and recovery operations following the September 11, 2001 terrorist attacks.

## ADMINISTRATIVE PREREQUISITES

18.     At all relevant times, Defendants were "employers" within the meaning of USERRA, 38 U.S.C. § 4303(4), and New York State Military Law § 243.

19.     Draves has satisfied all administrative prerequisites to filing this action.

20.     Draves has repeatedly notified the FDNY, both verbally and in writing, of the discrimination he has experienced and has requested that the FDNY rectify the situation, to no avail. The FDNY is aware of its obligations to Plaintiff yet has done nothing to rectify the situation.

21.     Any applicable statutes of limitations should be tolled due to Defendants ' continuing violations of Plaintiff's rights, which began in 2019 and continue through the present.

22.     The FDNY confirmed that Draves worked at least 40 hours at designated sites for WTC eligibility.

23.     Draves registered with the WTC medical monitoring at the Northwell Health Queens World Trade Center Health Program located at 97-77 Queens Blvd 9th Floor, Rego Park, NY 11374.

24.     Prior to his initial military activation, Draves signed an agreement with the City of New York regarding receiving paying benefits from the city of New York during the period of military duty. The city drafted this agreement and did not list any expiration date.

## FACTUAL ALLEGATIONS

25.     Draves was a member of the United States Army Reserve and entered service with the City of New York in 1982 as a police officer with the New York Transit Police. In 1985, he was appointed to FDNY as a Firefighter.  In 1999, Draves was promoted to Fire Marshal with the FDNY.

26.    After the September 11, 2001, terrorist attack on the World Trade Center (WTC), Draves actively participated in the rescue and recovery operations at the WTC where he was exposed to numerous hazardous substances, including toxic dust, debris and other harmful airborne contaminants present at the site.

27.    On February 19, 2002, Draves was activated by the United States Army Reserve to full time military service with the U.S. Army as a commissioned officer. Draves provided notice to the FDNY within 30 days of his military deployment.

28.    In August 2006, the U.S. Army reassigned Draves from his position as an activated United States Army Reserve officer to the Regular Army as a Lieutenant Colonel due to a wartime shortage of field grade officers.

29.    Draves served in the U.S. Army with great distinction for more than five years during a Time of War and National Emergency in Kuwait, Oman, Iraq and Afghanistan earning three Bronze Stars, the Army Combat Action Badge and the Legion of Merit for his bravery in combat.

30.    While Draves was in a battle zone under regular enemy fire, he was notified of a letter dated May 18, 2010, from Defendant Michael Gala (Gala) that Draves' military leave status with the FDNY was being changed because of reassignment from activated United States Army Reserve status to the Regular Army and that he and his family were being removed from health coverage provided by the City of New York, and that he was being removed from the FDNY pension system.

31.    Draves remained in continuous service with the U.S. Army until his Honorable Discharge on January 31, 2019.

32.    Upon release from active duty, Draves sought but was denied medical treatment/monitoring at the Northwell Health Queens World Trade Center Health Program (Northwell WTC) due to his changed FDNY employment status.

33.    Prior to the completion of his military service, December 19, 2018, Draves submitted a written request to FDNY for reemployment which complied with all requirements of USERRA and clearly communicated his desire to return to his position as Fire Marshal with all

appropriate advancements, promotions, and benefits that he would have received had he remained continuously employed.

34.     Despite Draves' timely and proper request for reemployment, Defendants failed to reemploy Plaintiff in the position he would have attained with reasonable certainty if not for his absence due to military service, or a position of like seniority, status, and pay, as required by USERRA, 38 U.S.C. § 4313(a)(2)(A).

35.     Defendants provided no reason for their denial of Plaintiff's reemployment request, in violation of USERRA's requirement that an employer must prove the existence of legitimate grounds for denying reemployment, 38 U.S.C. § 4312(d).

36.     In addition to denying Draves' request for reemployment, Defendants denied him pension rights to which he was entitled under USERRA.

37.     Throughout the time of his employment with FDNY, Draves worked overtime hours for which he was compensated.

38.     During the period of time Draves was on active military duty, FDNY Fire Marshals had the opportunity to work overtime hours, and did work overtime hours.

39.     Draves' military service falls within the exceptions to the five-year service limitation under USERRA, 38 U.S.C. § 4312(c), as it occurred during a period of war or national emergency declared by the President or Congress.

40.     Draves' FDNY pension benefits are required to be computed as if the employee had remained continuously employed during the period of military service, 38 U.S.C. § 4318.

41.     Defendants failed to properly credit Draves' military service time for pension purposes and denied him the pension rights he would have accrued had he remained continuously employed, in direct violation of USERRA.

42.     As a direct result of Defendants' unlawful actions, Draves' has suffered substantial financial losses, including but not limited to lost wages and benefits.

43.     Draves' has developed several WTC-related medical conditions, including chronic rhinosinusitis, gastroesophageal reflux disease, obstructive sleep apnea, and mental health conditions as a direct result of his exposure to hazardous substances during his participation in WTC rescue and recovery operations per is assignment as an FDNY Fire Marshal.

44.     These conditions substantially limit one or more of Draves' major life activities, qualifying him as an individual with a disability under the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL.

45.     Defendants 'discriminatory conduct ultimately resulted in Draves' constructive termination from the FDNY, as he was unable to receive the necessary medical monitoring and treatment for his WTC-related conditions.

46.     Defendants' discriminatory conduct was intentional, willful, and done with reckless disregard for Plaintiff's federally protected rights.

47.     Draves therefore seeks all available remedies under both USERRA and the ADA, including but not limited to: (a) declaratory relief; (b) injunctive relief in the form of reinstatement to his proper position with appropriate promotions and advancements; (c) compensation for lost wages and benefits; (d) liquidated damages for Defendants' willful violations; (e) prejudgment interest; (f) attorneys' fees and costs; and (g) such other and further relief as the Court deems just and proper.

## CAUSES OF ACTION

### COUNT I
#### Violation of USERRA - Failure to Reemploy
#### (38 U.S.C. § 4312)

48.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

49.     Plaintiff was an employee of Defendants who left his position to perform military service.

50.     Plaintiff provided advance verbal notice to Defendants of his military service, which was reasonable under the circumstances.

51.     Plaintiff's cumulative length of military service did not exceed five years, or alternatively, fell within the statutory exceptions to the five-year limitation as provided in 38 U.S.C. § 4312(c). ordered to or retained on active duty (other than for training) under any provision of law because of a war or national emergency declared by the President or the Congress, as determined by the Secretary concerned;

7

52.     Plaintiff was released from military service under honorable conditions. Plaintiff made a timely application for reemployment within the time period specified by USERRA, 38 U.S.C. § 4312(e)(1)(D).

53.     Despite Plaintiff's eligibility for reemployment under USERRA, Defendants failed and refused to reemploy Plaintiff.

54.     Defendants 'failure to reemploy Plaintiff constitutes a violation of USERRA, 38 U.S.C. § 4312.

55.     As a direct and proximate result of Defendants 'violation of USERRA, Plaintiff has suffered and continues to suffer substantial losses in earnings, job benefits, and retirement benefits that he would have received but for Defendants 'unlawful conduct.

## COUNT II

### Violation of USERRA - Discrimination in Employment Benefits
### (38 U.S.C. § 4311)

56.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

57.     USERRA prohibits discrimination against persons who serve in the uniformed services and acts to minimize disadvantages to civilian careers and employment which can result from such service.

58.     Plaintiff's military service was a motivating factor in Defendants 'decision to deny him employment benefits, specifically pension rights, to which he was entitled. Defendants discriminated against Plaintiff by denying him pension rights that he would have received had he remained continuously employed, in violation of 38 U.S.C. § 4311.

59.     As a direct and proximate result of Defendants 'violation of USERRA, Plaintiff has suffered and continues to suffer substantial losses in employment benefits, specifically pension benefits, that he would have received but for Defendants 'unlawful conduct.

## COUNT III

### Violation of USERRA - Failure to Properly Compute Pension Benefits
### (38 U.S.C. § 4318)

60.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

8

## COUNT V

**Violation of the Uniformed Services Employment and Reemployment Rights Act
38 U.S.C. § 4301 et seq.**

69.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

70.     At all relevant times, Plaintiff was an employee of Defendants within the meaning of USERRA, 38 U.S.C. § 4303(3).

71.     At all relevant times, Defendants were employers within the meaning of USERRA, 38 U.S.C. § 4303(4).

72.     Plaintiff was a member of the uniformed services who performed service therein, as defined by USERRA, 38 U.S.C. § 4303(13) and (16).

73.     Defendants discriminated against Plaintiff on the basis of his military service by denying him access to the WTC Health Program upon his return from military service, in violation of USERRA, 38 U.S.C. § 4311.

74.     Defendants 'denial of access to the WTC Health Program constituted a denial of a benefit of employment to which Plaintiff was entitled, in violation of USERRA, 38 U.S.C. § 4312 and § 4316.

75.     Defendants 'discriminatory conduct was willful, as defined by USERRA, 38 U.S.C. § 4323(d)(1)(C).

76.     As a direct and proximate result of Defendants 'unlawful discriminatory conduct in violation of USERRA, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including but not limited to lost wages and benefits, for which he is entitled to an award of damages.

77.     As a direct and proximate result of Defendants 'unlawful discriminatory conduct in violation of USERRA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of damages.

10

## COUNT VI

### Violation of the New York State Human Rights Law
### N.Y. Executive Law § 290 et seq.

78.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

79.     At all relevant times, Plaintiff was an individual with a disability within the meaning of the NYSHRL, N.Y. Executive Law § 292(21).

80.     At all relevant times, Defendants were employers within the meaning of the NYSHRL, N.Y. Executive Law § 292(5).

81.     Defendants discriminated against Plaintiff on the basis of his disability by denying him access to the WTC Health Program, in violation of the NYSHRL, N.Y. Executive Law § 296.

82.     Defendants further discriminated against Plaintiff on the basis of his military status by denying him access to the WTC Health Program upon his return from military service, in violation of the NYSHRL, N.Y. Executive Law § 296(1)(a) and (13).

83.     Defendants 'discriminatory conduct was willful, wanton, and malicious, and showed reckless disregard for Plaintiff's protected rights under the NYSHRL.

As a direct and proximate result of Defendants 'unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including but not limited to lost wages and benefits, for which he is entitled to an award of damages.

84.     As a direct and proximate result of Defendants 'unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of damages.

11

## COUNT VII

### Violation of the New York City Human Rights Law
### N.Y.C. Administrative Code § 8-101 et seq.

85.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

86.    At all relevant times, Plaintiff was an individual with a disability within the meaning of the NYCHRL, N.Y.C. Administrative Code § 8-102.

87.    At all relevant times, Defendants were employers within the meaning of the NYCHRL, N.Y.C. Administrative Code § 8-102.

88.    Defendants discriminated against Plaintiff on the basis of his disability by denying him access to the WTC Health Program, in violation of the NYCHRL, N.Y.C. Administrative Code § 8-107.

89.    Defendants further discriminated against Plaintiff on the basis of his military status by denying him access to the WTC Health Program upon his return from military service, in violation of the NYCHRL, N.Y.C. Administrative Code § 8-107(1)(a) and (21).

90.    Defendants' discriminatory conduct was willful, wanton, and malicious, and showed reckless disregard for Plaintiff's protected rights under the NYCHRL.

91.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, including but not limited to lost wages and benefits, for which he is entitled to an award of damages.

92.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

12

(1)    A declaration that Defendants' acts, conduct, and practices described herein violated Plaintiff's rights under USERRA and New York State Military Law § 243;

An order requiring Defendants to comply with the provisions of USERRA and New York State Military Law § 243 by:

(a.)    Immediately reinstating Plaintiff to the position of Fire Marshal, with all promotions, advancements, seniority, and status that he would have attained had he remained continuously employed including but not limited to back pay including the average overtime earned by FDNY Fire Marshals from February 1, 2019 through the present.

(b.)    Properly crediting Plaintiff's military service time for pension purposes; and

(c.)    Making all required contributions to Plaintiff's pension plan for the period of his military service;

(d.)    An award of damages in the amount of $2,000,000.00, representing Plaintiff's lost wages and benefits;

(e.)    An award of liquidated damages in an amount equal to the amount of lost wages and benefits awarded, pursuant to 38 U.S.C. § 4323(d)(1)(C), based on Defendants' willful violations of USERRA;

(f.)    An award of prejudgment interest on all amounts awarded, as provided by law;

(g.)    An award of reasonable attorneys' fees, expert witness fees, and other costs of this action, pursuant to 38 U.S.C. § 4323(h)(2);

(h.)    An order requiring Defendants to institute and carry out policies, practices, and programs that provide equal employment opportunities for service members and that eradicate the effects of their past and present unlawful employment practices; and

(i.)    A declaratory judgment that the actions, conduct, and practices of Defendants complained of herein violate the laws of the United States, the State of New York, and the City of New York;

(j.)    An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

13

(k.)    An order directing Defendants to provide Plaintiff with immediate access to the WTC Health Program;

(l.)    An award of damages in an amount to be determined at trial, but not less than $250,000, to compensate Plaintiff for all monetary and/or economic damages ADA..;

(m.)    An award of damages in an amount to be determined at trial, to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

(n.)    An award of punitive damages in an amount to be determined at trial;

(o.)    An award of liquidated damages pursuant to USERRA, 38 U.S.C. § 4323(d)(1)(C);

(p.)    Prejudgment interest on all amounts due;

(q.)    An award of Plaintiff's reasonable attorneys 'fees and costs; and

(r.)    Such other and further relief as the Court deems just and proper.


JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.


Dated: Mahopac, New York
　　　June __ 2025

BY:

//PJG//

Peter J. Gleason, PC
Attorney for Plaintiff
935 South Lake Blvd., Suite 17
Mahopac, New York 10541
(646) 872-3546
pjgleason@aol.com

14

## VERIFICATION

PETER GLEASON, an attorney duly license to practice law in the courts of the State of New York, affirms and states as follows:

Affiant is the attorney for Plaintiff LEONARD DRAVES and as such is fully familiar with the facts of this matter.

Affiant has read the foregoing Complaint and knows the contents thereof to be true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

This verification is made by the undersigned pursuant to CPLR § 3020 (d)(3) as the Plaintiff named herein is not located in the County in which the affiant maintains his office.

The grounds of my belief as to all matters not stated upon my own knowledge are based upon conversations with the Plaintiff and a review of Plaintiffs books and records which are relevant to this proceeding.


Dated: Putnam, New York
       June 5, 2025

                                        _____/PJG//_____
                                             PETER GLEASON