```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

LEONARD DRAVES,

                    Plaintiff,                    MEMORANDUM & ORDER
                                                  25-CV-3305 (EK)(PCG)
          -against-

CITY OF NEW YORK et al.,

                    Defendants.

-----------------------------------x
```

ERIC KOMITEE, United States District Judge:

Plaintiff Leonard Draves was a fire marshal until he joined the Army in 2002.  His military service has concluded, and now he wants his civilian job back.  He claims his former employer, defendant New York City Fire Department ("FDNY"), is obligated to reinstate him pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA").  But FDNY has refused.  So Draves sued — bringing USERRA and analogous state claims against FDNY, the City of New York, and various FDNY employees.[1]

---

[1] The individual defendants are: Daniel Nigro, individually and in his capacity as Fire Commissioner; Laura Kavanagh, individually and in her capacity as Fire Commissioner; Robert Tucker, individually and in his capacity as Fire Commissioner; Michael Gala, individually and in his capacity as Chief of FDNY Personnel; Michael Massucci, individually and in his capacity as Chief of FDNY Personnel; and Thomas Patrissy, individually and in his capacity as Battalion Chief in Charge of the FDNY Bureau of Health Services.  Since this lawsuit was filed, Lillian Bonsignore was named as the new Fire Commissioner.  Additionally, Joseph Cavarretta, Thomas Tanzosh, and Douglas Wilson have replaced defendants Michael Gala, Michael Massucci, and Thomas Patrissy, respectively.  These new hires are automatically added as defendants.  *See* Fed. R. Civ. P. 25(d).  However, because Draves is also suing for damages, the new defendants' predecessors will remain as individual-capacity defendants.

Several defendants now move to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court agrees that Draves fails to state a claim under USERRA and declines to exercise supplemental jurisdiction over his remaining state-law claims.[2] Accordingly, and for the reasons that follow, the motion is granted.

## I.   Background

The following facts are drawn from the complaint and assumed true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss, a "district court errs when it consider[s] affidavits and exhibits submitted by defendants." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000). Accordingly, the Court does not consider defendants' affidavit, ECF No. 30-2, for purposes of deciding this motion.[3]

In 1985, while a member of the United States Army Reserve, Draves joined FDNY as a firefighter. Compl. ¶ 25, ECF No. 1. Fourteen years later, he was promoted to fire marshal. *Id.* In February 2002, after three years in his new role, Draves was "activated" to full-time military service. *Id.* ¶ 27. Four

---

[2] The state claims are under New York State Military Law § 243, New York State Human Rights Law, N.Y. Exec. Law § 296, and New York City Human Rights Law, N.Y.C. Admin. Code § 8-107.

[3] Draves's arguments predicated on the supposed defects in defendants' affidavit are therefore unavailing. See Pl.'s Mem. of Law in Opp'n to Defs.' Motion to Dismiss 6 ("Pl.'s Br."), ECF No. 30-4.

years after that, he was reassigned to the Regular Army from his position as an activated member of the Army Reserve. *Id.* ¶ 28. From there, Draves served until January 2019, at which point he was honorably discharged. *Id.* ¶ 31.

Two months before he was discharged, Draves notified FDNY, in writing, that he wished to be reinstated as a fire marshal with "all appropriate advancements, promotions, and benefits that he would have received had he remained continuously employed." *Id.* ¶ 33.

FDNY denied his request without stating a reason. *Id.* ¶¶ 34-35. As a result, Draves alleges, he lost out on a variety of benefits — including access to the Northwell Health Queens World Trade Center Health Program ("WTC Health Program") and pension benefits computed as if he had stayed employed with FDNY the entire time he served in the Army. *Id.* ¶¶ 32, 41.

Draves filed this lawsuit in June 2025 charging five violations of USERRA: Count I charges the defendants with a violation of 38 U.S.C § 4312(a) for failure to reemploy; Counts II and V are brought under 38 U.S.C. § 4311 for military-service discrimination; Count III charges a violation of 38 U.S.C. § 4318 for failure to properly compute pension benefits. There is no Count IV; the complaint skips from Count III to Count V. Count V also alleges a second claim under 38 U.S.C. § 4316 for failure to confer benefits, a distinct theory.

3

Although not listed in the "Causes of Action" section of the complaint, Draves alleges one final violation of USERRA for FDNY's failure to notify him for their reason for denying his reemployment under 38 U.S.C. § 4312(d)(2).  *Id.* ¶ 35.[4]

In September 2025, all defendants but Michael Gala, Michael Massucci, and Thomas Patrissy — who had not yet been served — moved to dismiss the complaint in its entirety.[5] Briefing concluded in January of this year.  While the motion to dismiss was pending, Draves moved for a preliminary injunction, ECF No. 33, which also remains pending.  Because the Court grants the motion to dismiss, the request for preliminary injunctive relief is denied as moot.

## II.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

---

[4] The complaint arguably sets forth the violation of Section 4312(d) only to suggest that defendants sought to conceal that their refusal to rehire Draves was motivated by military-service discrimination rather than a standalone claim.  However, the Court construes Draves's complaint as alleging such a claim out of an abundance of caution because the federal rules have no requirement that all claims be enumerated in a separate causes of action section.  *See Quinones v. City of Binghamton*, 997 F.3d 461, 469 (2d Cir. 2021).

[5] Gala, Massucci, and Patrissy have since been served, ECF Nos. 39, 40, 41.  Gala has not yet appeared.  Massucci and Patrissy have moved to dismiss, and briefing remains ongoing, ECF No. 47.  Hereinafter, all references to the "defendants" refer only to the defendants who moved in September 2025 unless otherwise noted.

*Twombly*, 550 U.S. 544, 570 (2007).[6]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).  At the same time, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678.

### III. Discussion

Draves fails to state a claim for failure to reemploy, military service discrimination, failure to properly compute pension benefits, failure to confer benefits, and failure to notify under USERRA.

### A.   Claims Against FDNY

As an initial matter, the claims against FDNY must be dismissed because it lacks the capacity to be sued.  *See Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *see also Dowtin v. 73rd Precinct Police Dep't*, No. 23-CV-2286, 2025

---

[6] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

WL 510044, at *2 (E.D.N.Y. Feb. 15, 2025) (observing that FDNY is not a "suable entity").

**B.   Failure to Reemploy (Count I)**

USERRA is designed "to encourage [noncareer] service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service."  38 U.S.C. § 4301(a)(1).  To further this purpose, USERRA requires "the prompt reemployment" of eligible servicemembers by their old employers upon the conclusion of their service.  *Id.* § 4301(a)(2).  A servicemember is eligible for reemployment if:

> (1) the person . . . has given advance written or verbal notice of such service to such person's employer;
>
> (2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service in the uniformed services does not exceed five years; and
>
> (3) except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e).

*Id.* § 4312(a)(1)-(3).

The defendants argue that Draves has failed to satisfy the last two prongs because (1) his cumulative service exceeds five years without falling into an exception; and (2) his complaint offers only the conclusory assurance that he "submitted a written request to FDNY for reemployment which

6

complied with all requirements of USERRA."  Defs.' Mem. in Supp. of Mot. to Dismiss 7 ("Defs.' Br."), ECF No. 30-1 (quoting Compl. ¶ 33).

As to the latter claim, the Court is unconvinced; Draves has sufficiently alleged compliance with 38 U.S.C. § 4312(a)(3).  All Subsection 4312(e) requires is for servicemembers who served more than 180 days to "submit[] an application for reemployment with the employer not later than 90 days after the completion of the period of service."  38 U.S.C. § 4312(e)(1)(D).  Draves alleges that he did so: "[p]rior to the completion of his military service, December 19, 2018, Draves submitted a written request to FDNY for reemployment."  Compl. ¶ 33.  That is enough at this stage.[7]

The Court agrees, however, that Draves's military service exceeded the five-year limit without qualifying for an exception.  The complaint alleges that Draves served from February 19, 2002, to January 31, 2019 — a period of almost seventeen years.  Compl. ¶ 8.  He nevertheless claims that he qualifies for the USERRA exception available to servicemembers who were "ordered to or retained on active duty (other than for training) under any provision of law because of a war or

---

[7] While servicemembers are required to furnish certain documents with their reemployment applications "upon the request of [their] employer[s]," nothing in the complaint suggests that FDNY requested these documents or that Draves failed to respond to such a request.  38 U.S.C. § 4312(f)(1).

national emergency declared by the President or Congress, as determined by the Secretary concerned."  38 U.S.C. § 4312(c)(4)(B).

As is apparent, this exception requires two things: that the plaintiff's military service came "because of" a declared war or national emergency, *and* that the "Secretary concerned" has "determined" as much.  The complaint falls short on both counts.

1.    "Because Of" a War or National Emergency

First, the complaint does not specify the national emergency "because of" which Draves believes he served. Draves's *briefing* in connection with this motion does, however, point to Presidential Proclamation 7463: a 2001 proclamation declaring a national emergency "by reason of the terrorist attacks at the World Trade Center, New York, New York, and the Pentagon, and the continuing and immediate threat of further attacks on the United States."  Proclamation No. 7463, 66 Fed. Reg. 48,199 (Sept. 14, 2001).  The Proclamation has been renewed each year thereafter and remains in effect.  *See* Continuation of the National Emergency With Respect to Certain Terrorist Attacks, 90 Fed. Reg. 16941 (Aug. 29, 2025) (renewing Proclamation No. 7463 for the twenty-fourth straight year).  The complaint does not suggest, however, that Draves served "because of" (rather than simply *during*) that Proclamation.  Indeed, the

8

complaint says nothing at all about why Draves was activated to full-time military service in 2002.

Draves counters by first denying that he needs to make a causal showing.  He cites *Feliciano v. Department of Transportation*, 605 U.S. 38 (2025), for the proposition that "reservists called to active duty during a national emergency do not need to prove that their service was substantively connected to the emergency."  Pl.'s Br. 8.  That statement misreads *Feliciano*, which concerned a different statute entirely.  In *Feliciano*, the plaintiff was entitled to differential pay if he was called to active service from reserve duty on account of a contingency operation — an operation defined, in part, as one that takes place "during a national emergency." *Feliciano*, 605 U.S. at 43.  The question for the Court was whether that phrase entitled the plaintiff to differential pay if he served while a national emergency was ongoing, or whether he must "prove some additional, substantive connection between his service and a particular national emergency." *Id.* at 44.  Given the word "during," the Supreme Court concluded that a servicemember need only show that they served concurrent with a national emergency to receive differential pay. *Id.* at 45-46.

The statute in the instant case, by contrast, says that to be eligible for reemployment, the servicemember must have been ordered to serve "*because of* a war or national

9

emergency declared by the President or the Congress."  38 U.S.C. § 4312(c)(4)(B) (emphasis added).[8]  And again, Draves fails to plead any reason why he was ordered to active service.

Draves later concedes — in briefing his motion for a preliminary injunction — that he must make a causal showing. There, he argues that his Discharge of Active Duty demonstrates the necessary causal connection because it states that he was "ordered to active duty for [the] purpose of contingency operations" in accordance with 10 U.S.C. § 12301(d).  Pl.'s Reply in Supp. Of Mot. For Prelim. Inj. 4, ECF No. 42.  This argument cannot be considered because "a party is not entitled to amend its complaint through statements made in motion papers."  *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

But even if it could, Draves would still fail to demonstrate that he qualifies for the Section 4312(c)(4)(B) exception.  A "contingency operation," while not mentioned in USERRA, is defined in relevant part by 10 U.S.C. § 101 — the same statute the Supreme Court interpreted in *Feliciano* — as a "military operation" that "results in the call or order to . . . active duty of members of the uniformed services under . . . any

---

[8] In Draves's opposition to the motion to dismiss, he all but misquotes Section 4312(c)(4)(B) when he says that it "states" that "[s]ervice performed *during* a war or *during* a national emergency declared by the President or Congress, as determined by the Secretary concerned."  Pl.'s Br. 7 (emphasis added).

. . . provision of law during a war or during a national emergency declared by the President or Congress."  10 U.S.C. § 101(a)(13)(B).  Draves's argument is that the order to active duty for the "purpose" of an operation that takes place during a national emergency necessarily constitutes service "because of" said national emergency.

*Feliciano* forecloses this point.  It held that to qualify as a contingency operation, as noted above, an operation need only occur concurrently with a national emergency. *Feliciano*, 605 U.S. at 49.  All Draves's discharge papers therefore show is that he was ordered to serve for the "purpose" of an operation that took place *while* a national emergency was also ongoing.  That is not enough to demonstrate the causal connection USERRA requires.

2.   "As Determined by the Secretary Concerned"

Draves's Section 4312 claim fails for a second reason: he does not identify any relevant "determination" by the Secretary of the Army in his complaint.  This stands in stark contrast to the pleadings that other courts have found to satisfy the exception in Section 4312(c)(4)(B).  In one such case, for example, the servicemember flagged a memorandum from the relevant Secretary that read as follows:

> [I]n accordance with 38 U.S.C. 4312(c)(4)(b), I have
> determined that Navy and Marine Corps Reserve
> personnel voluntarily ordered to [active duty] . . .

11

in support of the national emergency declared under Presidential Proclamation 7463 of 14 September 2001, will have those periods of service exempted from the five-year limitation for reemployment rights under USERRA.

*Shea v. Iron Workers Dist. Council of New Eng. Pension Fund*, 158 F. Supp. 3d 20, 25 (D. Mass. 2016).[9]

Draves later suggests that the "Secretary concerned" did determine that he was ordered to active duty because of a national emergency. He argues in his opposition to the motion to dismiss that:

The Department of Defense has consistently recognized that service members who served during this period were serving during a time of war or national emergency for purposes of USERRA's five-year exception. The Secretary of Defense, as the "Secretary concerned" referenced in 38 U.S.C. § 4312(B) [*sic*], has determined that service during this period falls within the exception to the five-year limitation.

Pl.'s Br. 8.

But the Secretary of Defense is not the "Secretary concerned." That would be the Secretary of the Army. *See* 38 U.S.C. § 101(25)(A) ("The term 'Secretary concerned' means the Secretary of the Army, with respect to matters concerning the Army . . . ."). The Department of Defense has indicated that it does not make this USERRA determination itself. *See Sutton v. City of Chesapeake*, 713 F. Supp. 2d 547, 554-55 (E.D.

---

[9] In *Shea*, the servicemember's order of deployment also stated: "The member is ordered to active duty in support of the national emergency declared under Presidential Proclamation 7463 of 14 SEP 01." *Id.*

Va. 2010) (discussing a Department of Defense memorandum advising the service secretaries and Commandant of the Coast Guard that "it would be appropriate [for them] to make a determination that the period of service performed by members who volunteer for active duty under section 12301(d) of Title 10 . . . is exempt from the USERRA five-year limit").

\*    \*    \*

Finally, separate from his statutory arguments, Draves posits that "[i]t is of interest to note that Defendants paid Plaintiff for the first 8 years of military service yet now are attempting to claim a 5 year limit.  Hence, by their conduct . . . the five-year limit does not apply."  Pl.'s Br. 7.  This argument, while not entirely clear, appears to sound in waiver or estoppel.  Draves makes no attempt to develop the argument further.  The complaint does allege that the reason FDNY ended Draves's pay after eight years is because that was the point at which he switched from activated Army Reserve status to the Regular Army.  *See* Compl. ¶ 30.  But it remains unclear why the fact that FDNY paid Draves for eight years of military service would mean that FDNY waived the Section 4312(a)(2) five-year requirement for reemployment.[10]

---

[10] FDNY may have ceased paying Draves's salary when he entered the Regular Army because of New York's Extended Military Benefits Program, which provides City salary payments to employees who are members "of the organized militia or . . . reserve forces or reserve components of the armed forces of

13

In sum, Draves does not state a claim for failure to reemploy.[11]

**C.    Military Service Discrimination (Counts II and V)**

Next, Draves claims that defendants violated 38 U.S.C. § 4311 by denying him pension rights as well as access to the WTC Health Program.  Compl. ¶¶ 58, 74.

Section 4311 says that "[a] person who . . . has performed . . . service in a uniformed service shall not be denied initial employment . . . or any benefit of employment by an employer on the basis of that . . . performance of service." 38 U.S.C. § 4311(a).  An employer's actions violate Section 4311(a) if the person's service "in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such . . . service." *Id.* § 4311(c)(1).

To survive a motion to dismiss the Section 4311 claim, a plaintiff must plead "facts upon which it could plausibly be inferred that his military service or any protected activity was a substantial or motivating factor in the adverse employment actions."  *Hunt v. Klein*, 476 F. App'x 889, 891 (2d Cir. 2012).

---

the United States," but not to those serving in the armed forces.  N.Y. Mil. Law § 242.

[11] To hold the individual defendants personally liable, Draves would also need to allege that they had been "delegated the performance of employment-related responsibilities."  38 U.S.C. § 4303(4)(A)(i).  The complaint does not plainly indicate what role, if any, the individual defendants played in FDNY's decision not to rehire Draves.  But because the complaint is dismissed on other grounds, we need not decide this issue.

The complaint pleads no such *facts* — plausibly or otherwise. The only non-conclusory fact it alleges as to discrimination is that defendants provided "no reason" for their denial of Draves's reemployment. Compl. ¶ 35. The complaint's other mentions of the defendants' supposed discrimination are "[t]hreadbare recitals of the elements of [the] cause of action, supported by mere conclusory statements" which "do not suffice" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678; *see, e.g.*, Compl. ¶ 58 ("Plaintiff's military service was a motivating factor in Defendants 'decision [*sic*] to deny him employment benefits . . . ."); *see also* Compl. ¶¶ 73, 75. After disregarding legal conclusions, the only inference that can be gleaned from the complaint is that Draves believes he lost out on access to pension benefits and the WTC Health Program as a simple consequence of FDNY's refusal to rehire him.

Draves may or may not be able to rectify this pleading deficiency with respect to his pension benefits. But he cannot do so with respect to the WTC Health program. The WTC Health Program is a federal program covering active and retired members of FDNY alike. *See* 42 U.S.C. § 300mm-21(2)(A)(i) (WTC Health Program open to any individual who "was a member of the Fire Department of New York City (whether fire or emergency personnel, active or retired) who participated at least one day in the rescue and recovery effort at any of the former World

15

Trade Center sites"). Thus, Draves's current employment status with FDNY has no bearing on his eligibility for health services.

## D.    Failure to Properly Compute Pension Benefits (Count III)

Draves says that FDNY improperly calculated his pension benefits in violation of 38 U.S.C. § 4318. However, Section 4318 only applies to "a person reemployed under this chapter." 38 U.S.C. § 4318(a). As discussed in Section III.B, Draves is not eligible for reemployment and so Section 4318 does not apply.

## E.    Failure to Confer Benefits (Count V)

Draves brings another claim in Count V for failure to confer benefits in violation of 38 U.S.C. § 4316. Specifically, Draves says that defendants' "denial of access to the WTC Health Program constituted a denial of a benefit of employment to which Plaintiff was entitled, in violation of USERRA, 38 U.S.C. § 4312 and § 4316." Compl. ¶ 74.

The Section 4312 claim is derivative of Count I and is therefore dismissed. As discussed in Section III.B, Draves does not qualify for the protections contemplated in Section 4312. Draves's Section 4316 claim also fails because Section 4316 only applies to servicemembers "reemployed under [USERRA]" or servicemembers who are denied employment benefits when they are "absent from a position of employment by reason of service in the uniformed services." 38 U.S.C. § 4316(a), (b). Draves does

16

not have the right to be reemployed under USERRA and does not allege that he was denied benefits he was entitled to while in active service. *See* Compl. ¶ 32 ("*Upon release from active duty*, Draves . . . was denied medical treatment/monitoring at" the WTC Health Program. (emphasis added)).

## F.    Failure to Notify

The complaint says that defendants' failure to notify Draves of the reason for denying his reemployment request violated 38 U.S.C. § 4312(d). *See* Compl. ¶ 35. It did not. Section 4312(d)(2) says only that if an employer denies a reemployment request on account of "impossibility or unreasonableness, undue hardship, or the brief or nonrecurrent nature of the employment without a reasonable expectation of continuing indefinitely or for a significant period," then the employer has the burden of proof. 38 U.S.C. § 4312(d)(2). Here, Draves was not denied for one of those reasons. And, in any event, the fact that defendants bear the burden of proof in litigation does not entitle Draves to notice of their reasons for denial in a rejection letter.

## G.    Remaining Federal Claims

Finally, the complaint invokes the Americans with Disabilities Act of 1990 (as amended) ("ADA"), 42 U.S.C. §§ 12101-12213, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. *See* Compl. ¶ 1. However, he does not

17

develop these claims in his complaint or other briefing and omits them entirely from the "Causes of Action" portion of the complaint.  Regardless, even if the complaint could be read to assert these claims, they are dismissed because all the complaint "tenders" in support of them are "naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678. Draves alleges no facts suggesting he was discriminated against because of a disability.

## H.   Supplemental Jurisdiction

Having dismissed all federal claims, the Court declines to exercise supplemental jurisdiction over the state-law claims.  28 U.S.C. § 1367(c)(3); *see Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025).

## I.   Dismissal With and Without Prejudice

Dismissal is without prejudice as to Counts I through III.  Although a failure to identify a determination by the Secretary of the Army would fatally defeat Draves's Section 4312 claim in Count I, dismissal is without prejudice in the event Draves can identify a determination that the Court has been unable to locate.  As previously noted, Draves omitted Count IV from his complaint.  Both claims in Count V are dismissed with prejudice because defendants do not control access to the WTC Health Program.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (dismissal with prejudice proper if amendment would

be futile).  Moreover, Draves's claim under 38 U.S.C. § 4312(d) for failure to notify is also dismissed with prejudice because defendants have not raised any of the defenses listed in Section 4312(d)(2)(A)-(C).  Finally, the state-law claims in Counts VI and VII as well as the remaining claims not contained in a count — under the ADA, the Rehabilitation Act, and New York State Military Law § 243 — are also dismissed without prejudice.

## IV.  Conclusion

For the foregoing reasons, defendants' motion to dismiss is granted in full.  All Counts are dismissed as well as the claims brought under 38 U.S.C. § 4312(d), the ADA, the Rehabilitation Act, and New York State Military Law § 243. Dismissal is without prejudice except for the claims in Count V as well as under 38 U.S.C. § 4312(d).

While briefing has not concluded on defendants Michael Massucci and Thomas Patrissy's motion to dismiss, and defendant Michael Gala has not appeared, the claims against them are dismissed as well.  *See Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) (affirming *sua sponte* dismissal of defendant who never appeared or moved for dismissal where plaintiff was given notice that other defendants were moving to dismiss and had responded with an opposition memorandum) *abrogated on other grounds by Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318 (2012); *see*

19

*also* 5B *Wright & Miller's Federal Practice & Procedure* § 1357 (4th ed. 2026) ("[T]he district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties.").

If Draves wishes to amend his complaint, he must do so within twenty-eight days.  If he declines to amend, the Court will direct the Clerk of Court to enter judgment and close the case.

Because the complaint is dismissed, Draves's motion for a preliminary injunction is denied as moot.

SO ORDERED.

_/s/ Eric Komitee_
ERIC KOMITEE
United States District Judge

Dated:    May 7, 2026
          Brooklyn, New York

20